OLIVER et al. v. PARLIN & ORENDORFF CO.

(Circuit Court of Appeals, Fifth Circuit. December 11, 1900.)

No. 965.

FEDERAL COURTS—ENJOINING SUIT IN STATE COURT—PRIORITY OF JURISDICTION.
In a suit in equity in a federal court, brought, among other things, to recover possession of certain real estate, and to cancel a deed of trust executed by prior owners thereon for fraud, the grantors and grantees in such deed were made defendants. The grantees answered, under oath, that long before the commencement of the suit they had sold and transferred the deed of trust and the notes secured thereby to a bank named, and disclaimed any interest in the property. After replications had been filed, the testimony taken, and the cause set down for hearing, the bank which owned the deed of trust commenced a suit for its foreclosure in a state court, and, in accordance with the practice, procured the issuance of a writ of sequestration, under which the sheriff took possession of the property. Held, that the federal court had not acquired such priority of jurisdiction as authorized it, in view of Rev. St. § 720, which prohibits the granting of any injunction to stay proceedings in any court of a state, to enjoin the prosecution of the foreclosure suit in the state court, upon the filing of an amended bill by the complainant, in which for the first time the bank was made a party defendant.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Lauch McLaurin, for appellant.
U. F. Short, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is an appeal from an interlocutory order granting an injunction restraining proceedings in a state court. The original bill was filed the 18th day of December, 1899, against D. Oliver, F. C. Oliver, S. S. Walker & Sons (a firm composed of S. S. Walker, J. L. Walker, and Sanders Walker), and W. W. Wright,

trustee. The allegations of the bill, more or less, tend to support the prayer for relief, which is as follows:

"In consideration whereof, and for as much as your orator is remediless in the premises at and by the strict rule of the common law, and is only relievable in a court of equity, where matters of this kind are properly cognizable and reviewable, your orator prays that the defendants S. S. Walker & Sons, a firm composed of S. S. Walker, J. L. Walker, and Sanders Walker, be compelled to answer under oath, and to state whether or not the said sum of money owing from F. C. Oliver to them, as hereinbefore stated, and secured by deed of trust upon said premises, is paid, and to state specifically and definitely the credits to which said sum is entitled, and the respective dates and amounts of each of said credits, and how and when the same was received by them, and the balance due or claimed to be due upon said indebtedness; that the said defendants F. C. Oliver and D. Oliver may answer the premises, but not upon oath or affirmation, the benefit whereof is expressly waived by your orator. It now prays the court that the deed aforesaid executed by F. C. Oliver to D. Oliver, on the 15th day of April, 1897, be canceled, set aside, and for naught held, and that the said D. Oliver be ordered and directed by a decree of this court to convey to your orator, by a quitclaim deed, all the right, title, and interest which he acquired under and by virtue of said fraudulent conveyance of F. C. Oliver to him, within such time as the court shall direct: that an account be taken of the rents and profits of said property from the 5th day of December, 1899, at which time your orator acquired title thereto, and that the same be directed to be paid to your orator by the defendant or defendants receiving the same, and that your orator have a writ of possession directing the said defendants to deliver said property to your orator; that an account be taken of the sum or sums due and owing from the said F. C. Oliver to the defendants S. S. Walker & Sons, if any, and that your orator be permitted to pay the same, if any such sum is found due, and that the cloud created by said deed of trust upon the title to said premises be removed, and that said deed of trust be canceled, satisfied, and for naught held, and that the said defendants S. S. Walker & Sons and W. W. Wright, trustee, be enjoined and restrained from foreclosing said deed of trust by advertisement and sale pending this litigation."

All the defendants appeared and answered at more or less length, and the defendants S. S. Walker & Sons answered as follows:

"First. And now come the respondents S. S. Walker, J. L. Walker, and Sanders Walker, composing the firm of S. S. Walker & Sons, and, in answer to the subpoena heretofore served on them herein, would show to the court that they have no interest in the property herein sued for, and had none at the time of the commencement of this suit: wherefore they pray the court that they go hence without day, and that they have judgment for their costs, and for such other and further relief as they may be entitled.

"Second. And, for further answer, now come the said respondents, and say, in answer to the bill herein filed, requiring that they answer under oath what interest, if any, they have in a certain deed of trust executed by F. C. Oliver and wife, on the 23d day of November, 1896, in favor of these respondents, to secure a note for the sum of two thousand nine hundred and forty-five ($2,945.00) dollars, in which W. W. Wright, one of their co-respondents, is trustee, and would show to the court that said note was given for the erection of a brick building on the lots described in the bill herein filed, and that long prior to the commencement of this suit said note had been transferred by these respondents to the Groesbeck National Bank; that at the time of said transfer no credits had been indorsed on said note, and that the only money received by these respondents was paid to them by the Groesbeck National Bank; that they have no knowledge as to whether F. C. Oliver, or any other person, has paid anything on said note since it has been transferred to the Groesbeck National Bank; that these respondents have not now, nor have they had for a long time (for more than two years) prior to the filing of this affidavit, any interest in said note, or the property herein sued for. Where-

105 F.—18

fore they pray that they be discharged, and that they go hence without day, and have judgment for their costs, etc.; and as in duty bound they will ever pray."

The record shows that, at the time the defendants entered their appearance, the complainant, through his counsel of record, was informed by the defendants' counsel, as well as by the answer of S. S. Walker & Sons, that the note secured by the deed of trust had long before been transferred to the Groesbeck National Bank, who then held the same, and that à request was made that the complainant should make the said Groesbeck National Bank a party to the suit. The complainant filed replications to all the answers, an examiner was appointed, the evidence all taken, and the case made ready for hearing. The record further shows:

"That on May 3, 1900, the Groesbeck National Bank instituted its suit, No. 3,507, on the docket of the district court of Texas for Limestone county, making F. C. Oliver, D. Oliver, and Parlin & Orendorff Company parties defendant therein, and immediately had issued citation therein on them. In said suit the said bank makes the following claims: That it is the legal and equitable owner and holder of the promissory note for $2,945.00 mentioned in the bill of complaint in said cause No. 532, in the United States circuit court at Dallas, Texas, made by F. C. Oliver to S. S. Walker & Sons on November 23, 1896, as well as the lien executed by said Oliver on the lands described in the bill of complaint in said cause No. 532, to secure the payment of said note; that it so owned and held said note and lien since a time prior to the maturity of said note,—that is, since a date prior to January 23, 1897; that the said note is wholly due and unpaid, and that the said bank is entitled to recover thereon the face value thereof, with interest and attorney's fees, and is further entitled to a foreclosure of the said lien as a prior lien upon the said land against all the defendants in the said suit, and prays for relief accordingly; that the Groesbeck National Bank, in its suit No. 3,507 in the said state court, in compliance with the law in such cases made and provided, made its affidavit and bond for the purpose of securing the issuance of a writ of sequestration in said cause No. 3,507, upon said land hereinbefore named, being the same land described in complainant's said cause No. 532, in the United States circuit court; and thereafter, in compliance with the statutes in such cases made and provided, a writ of sequestration was issued by the said state court in the said cause No. 3,507, to the sheriff of Limestone county, Tex., who, in compliance therewith, according to law seized and took into his possession the land above described."

On May 28, 1900, the complainant, the Parlin & Orendorff Company, filed its amended bill in the circuit court, averring substantially the same matters set forth in the original bill, together with the fraternal relationship between Rod Oliver, the president of the Groesbeck National Bank, and the defendants D. Oliver and F. C. Oliver, and the knowledge of the bank of the suit pending, and charged fraud and collusion, and on these allegations prayed that the Groesbeck National Bank should be made a party defendant, and that it should be restrained by injunction from further proceeding in the action commenced in the district court of Limestone county, Tex., and from commencing or prosecuting any further action or proceeding at law in respect of or concerning the matters aforesaid, or any of them, and for such other and further relief as the circumstances of the case might require. Upon notice, the Groesbeck National Bank was then made a party to the suit, and the injunction issued as prayed for, on a bond of $3,000.

The assignments of error are numerous and lengthy, and relate mainly to the right of the court below to permit an amendment to the original bill on the showing made, and, after replication, the taking of testimony and the setting of the cause for hearing. But the only question we deem it necessary to pass upon on this appeal, which is based on an interlocutory order granting an injunction, is whether the injunction restraining the proceedings in the state court was properly issued. Jurisdiction to issue this injunction, notwithstanding the provisions of section 720, Rev. St., is claimed; because it is said the circuit court, prior to the commencement of proceedings in the state court, was fully seised of jurisdiction of the parties and the matters in controversy, and that to allow the proceedings to go on in the state court would be to defeat the previously acquired jurisdiction of the circuit court, and forestall any decree that may be therein rendered. The scope of the bill in this case, as taken from the allegations and the prayer, is very wide, and the bill is to be considered as one to recover possession of certain real estate, set aside a deed of trust for fraud, remove clouds from title, recover rents and profits, and for an accounting in a certain contingency; and, as to these matters and against the parties to the bill, we assume, for the purpose of this appeal, that the circuit court is fully seised of jurisdiction. "The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399." Farmers' Loan & Trust Co. v. Lake St. El. R. Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667. The leading cases in regard to the right of a court of the United States, in a proper case, to issue an injunction in disregard of section 720 of the Revised Statutes, are French v. Hay, 22 Wall. 231, 253, 22 L. Ed. 799, 857, and Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497. In citing and considering these cases, the supreme court says:

"The cited cases were of ancillary bills, and were, in substance, proceedings in the federal courts to enforce their own judgments by preventing the defeated parties from wresting replevied property from the plaintiffs in replevin,

who by the final judgments were entitled to it. As was said in Dietzsch v. Huidekoper: 'A court of the United States is not prevented from enforcing its own judgments by the statute which forbids it to grant a writ of injunction to stay proceedings in a state court. Dietzsch, the original plaintiff in the action on the replevin bond, represented the real parties in interest, and he was a party to the action of replevin, which had been pending, and was finally determined in the United States circuit court. That court had jurisdiction of his person, and could enforce its judgment in the replevin suit against him, or those whom he represented. The bill in this case was filed for that purpose, and that only.' " Harkrader v. Wadley, 172 U. S. 148, 165, 19 Sup. Ct. 119, 43 L. Ed. 399.

An examination of the cases which have attempted to follow French v. Hay and Dietzsch v. Huidekoper will show that in every well-considered case, when an injunction restraining already instituted proceedings in a state court has been issued by a United States court, it was either based on a decree or judgment of the United States court which it was necessary and proper to enforce; or, if issued prior to judgment or decree, it was directed against a party who, after jurisdiction over him and the cause was fully vested, had resorted to proceedings in the state court necessarily conflicting with, if not ousting, the jurisdiction of the United States court. See Shoemaker v. French, Fed. Cas. No. 12,800; Sharon v. Terry (C. C.) 36 Fed. 337; Mutual Life Ins. Co. v. University of Chicago (C. C.) 6 Fed. 443; Railroad Co. v. Kuteman, 4 C. C. A. 503, 54 Fed. 551; Abeel v. Culberson (C. C.) 56 Fed. 333; President v. Merritt (C. C.) 59 Fed. 7.

The present case shows that the Groesbeck National Bank acquired the note secured by the deed of trust involved in this controversy long prior to the maturity of the same, and long prior to the institution of the present suit in the circuit court, and that the said bank was neither a party nor a privy to the suit in the circuit court; in fact, the record shows that although the complainant was fully advised that the Groesbeck National Bank owned the note in question, and had acquired the same prior to the filing of his bill, he neglected and refused to make the Groesbeck National Bank a party. Under these circumstances, we are of opinion that although the said bank, through its president, may have been fully informed, it was not compelled to intervene in the complainant's suit, nor to await the decision of issues pending therein between other parties, but had the right to commence, in a proper court, a suit for the determination of its rights, including a foreclosure of the deed held by it. It thus appears that the present case is clearly distinguishable from each and all of the cases wherein it has been held that notwithstanding the provisions of section 720, Rev. St., the United States court might issue an injunction restraining instituted proceedings in a state court. If section 720, Rev. St., means something, and is not to be emasculated by construction and exceptions, it means that, in cases like the present, no injunction shall be granted "to stay proceedings in any court of a state." The order appealed from, so far as it restrains proceedings heretofore instituted in the state court, is reversed, and the cause is remanded to the circuit court, with instructions to further proceed as equity may require.